Eddie A. TURNER and Jerome Daly

v.

The AMERICAN BAR ASSOCIATION et al.

Civ. A. No. 5–74–42.

N. D. Texas,
Lubbock Division.

Raymond M. HARTMAN and Jerome Daly

v.

The AMERICAN BAR ASSOCIATION et al.

Civ. A. No. 74–480.

W. D. Pennsylvania.

Loran L. TAYLOR and Jerome Daly

v.

The AMERICAN BAR ASSOCIATION et al.

Civ. A. No. S74–84.

N. D. Indiana,
South Bend Division.

Loran L. TAYLOR

v.

John MONTGOMERY et al.

Civ. A. No. S74–29.

N. D. Indiana,
South Bend Division.

Larry S. PENDELL et al.

v.

The AMERICAN BAR ASSOCIATION et al.

Civ. A. No. S75–74.

N. D. Indiana,
South Bend Division.

Daniel M. PILLA and Jerome Daly

v.

The AMERICAN BAR ASSOCIATION et al.

Civ. A. No. 4–74–190.

D. Minnesota,
Fourth Division.

Noah Jefferson CARDEN

v.

William Bervard HAND et al.

Civ. A. No. 74–426–P.

S. D. Alabama.

Thomas F. STOCKHEIMER and Jerome Daly, et al.

v.

The AMERICAN BAR ASSOCIATION et al.

Civ. A. No. 75–C–182.

W. D. Wisconsin.
United States District Court.

Nov. 5, 1975.

454

Eddie A. Turner and Jerome Daly, pro se.

Frank D. McCown, U. S. Atty., Kenneth J. Mighell, Robert B. Wilson, Asst. U. S. Attys., and Richard A. Scully, Trial Atty., Tax Div., Dept. of Justice, for federal judicial defendants and other federal defendants in No. 5–74–42.

John L. Hill, pro se, and David M. Kendall, First Asst. Atty. Gen. of Tex., and John W. Odam, Executive Asst. Atty. Gen., for defendant Justices of the Supreme Court of Texas and Dolph Briscoe, Governor of the State of Texas in No. 5–74–42.

Davis Grant, Gen. Counsel, Steven D. Peterson and Gary McNeil, Asst. Gen. Counsels, Austin, Tex., for defendants The American Bar Ass'n, Chesterfield Smith, and The State Bar of Texas in No. 5–74–42.

Raymond M. Hartman, pro se.

Richard L. Thornburg, U. S. Atty., Thomas A. Daley, Asst. U. S. Atty., pro se, and Richard A. Scully, Trial Atty., Tax Div., U. S. Dept. of Justice, for federal judicial defendants and other federal defendants in No. 74–480.

Meyer, Unkovic & Scott, Alexander Unkovic and Frederick J. Francis, Pittsburgh, Pa., for defendants The American Bar Ass'n and Chesterfield Smith in No. 74–480.

Washington & Washington, George Washington and George Washington, Jr., pro se.

Loran L. Taylor, pro se.

John R. Wilks, U. S. Atty., Richard F. Mitchell, Atty., Tax Div., U. S. Dept. of Justice, and Richard L. Kieser, Asst. U. S. Atty., for federal judicial defendants and other federal defendants in No. S74–84.

F. Ryan Duffy, pro se.

William E. Steckler, pro se.

Cale J. Holder, pro se.

Dillon, Kelley, McCarty, Hardamon & Cohen, John J. Dillon, Bose, McKinney & Evans, William M. Evans, and William F. Harvey, Indianapolis, Ind., for defendants Justices of the Supreme Court of Indiana in No. S74–84.

Milton A. Johnson, South Bend, Ind., for defendant John Montgomery, State of Indiana Circuit Court Judge in No. S74–84.

Thornburg, McGill, Deahl, Harman, Carey & Murray, James F. Thornburg and William J. Reinke, South Bend, Ind., for defendants The American Bar Ass'n and Chesterfield Smith in No. S74–84.

Paul E. Beam, Gen. Counsel, Indianapolis, Ind., for defendant The Indiana State Bar Ass'n in No. S74–84.

Milton A. Johnson, South Bend, Ind., for defendants John W. Montgomery and Joseph Nyikos, State of Indiana Circuit Court Judges in No. S74–29.

Richard J. McDonald, South Bend, Ind., for defendant Dean Bolerjack, Sheriff of St. Joseph County in No. S74–29.

James D. Nafe, pro se, and for the Nat. Bank and Trust Co. in No. S74–29.

Larry S. Pendell and Barbara A. Pendell, pro se.

John R. Wilks, U. S. Atty., and John S. Leonardo and Richard L. Kieser, Asst. U. S. Attys., for defendant United States District Judge Robert A. Grant in No. S75–74.

Simpson & McLaughlin, W. L. McLaughlin, Goshen, Ind., for defendants Indiana State Judges Aldo J. Simpson, James Simpson and Frank Algate in No. S75–74.

Byron & Daniels, Philip E. Byron, Jr., and Robert T. Sanders, III, Elkhart, Ind., for defendants Indiana State Judges Charles E. Hughes and Stanley A. Raymer in No. S75–74.

Worth N. Yoder and Alphonse J. Spahn, Elkhart, Ind., for defendant Indiana State Judge Lee Mellinger in No. S75-74.

Thornburg, McGill, Deahl, Harman, Carey & Murray, James F. Thornburg, William J. Reinke and Gregory J. Utken, South Bend, Ind., for defendants The American Bar Ass'n and The Indiana State Bar Ass'n.

Daniel M. Pilla, pro se.

Robert G. Renner, U. S. Atty., Stephen G. Palmer, Asst. U. S. Atty., and Richard A. Scully, Trial Atty., Tax Div., U. S. Dept. of Justice, for federal judicial defendants and other federal defendants in No. 4-74-190.

Warren Spannaus, Atty. Gen., State of Minnesota, Peter W. Sipkins, Sol. Gen. and Michael P. Berman, Sp. Asst. Atty. Gen., for Minnesota judicial defendants and other Minnesota state defendants in No. 4-74-190.

Henson & Tully, Robert F. Henson and William J. Miller, Minneapolis, Minn., for defendants The American Bar Ass'n and Chesterfield Smith in No. 4-74-190.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, Minn., for defendants George Ramier, Herbert C. Davis and Hyman Edelman in No. 4-74-190.

Patrick J. Foley, pro se.

Noah Jefferson Carden, pro se.

Edward H. Levi, Atty. Gen., Carla A. Hills, Asst. Atty. Gen., Charles S. White-Spunner, Jr., U. S. Atty., Harland F. Leathers, Alexis Panagakos, Asst. U. S. Attys., John W. Stokes, Jr., U. S. Atty., and Julian M. Longley, Jr., Asst. U. S. Atty., for federal judicial defendants and other federal defendants in No. 74-426-P.

William J. Baxley, Atty. Gen., and Frederick S. Middleton, III, Asst. Atty. Gen., for defendants Justices of the Alabama Supreme Court in No. 74-426-P.

Warren Spannaus, Atty. Gen., State of Minnesota, and Peter W. Sipkins, Sol. Gen., for defendants present and former Justices of the Supreme Court of Minnesota in No. 74-426-P.

William H. Morrow, Jr., Gen. Counsel, Montgomery, Ala., for defendant Alabama State Bar Ass'n, The American Bar Ass'n, and Chesterfield Smith in No. 74-426-P.

M. Roland Nachman, Jr., pro se.

William L. Howell and M. Lloyd Roebuck, Mobile, Ala., for defendant M. Lloyd Roebuck in No. 74-426-P.

Thomas F. Stockheimer, pro se.

David C. Mebane, U. S. Atty., Warren W. Wood, Asst. U. S. Atty., and Richard A. Scully, Tax Div., Dept. of Justice, for federal defendants in No. 75-C-182.

Bronson C. La Follette, Atty. Gen., and James H. Petersen, Asst. Atty. Gen., for State of Wisconsin defendants and other Wisconsin state defendants in No. 75-C-182.

DeWitt, McAndrews & Porter, S. C., Jack R. DeWitt and Stuart C. Herro, Madison, Wis., for defendant The American Bar Ass'n in No. 75-C-182.

## MEMORANDUM AND ORDER

GARZA, District Judge.

In May, 1974, and thereafter, the Chief Justice of the United States Supreme Court, Warren E. Burger, and the Chief Judge of the Fifth Circuit, John R. Brown, began designating the undersigned to sit in seven similar cases and three related cases filed in the United States District Courts in the States of Texas, Pennsylvania, Indiana, Minnesota, Alabama and Wisconsin.[1]

These suits have been filed by individual members of the American Constitutional Protective Rights Association against, among others, virtually the entire federal judiciary. The central figure among the Plaintiffs is Jerome Daly,

1. By one count, there are at least 24 cases which have been filed within the last two years involving similar questions. See Defendant Grant's Motion to Dismiss filed on September 17, 1975. *Pendell, Pendell and Taylor v. American Bar Association, et al.*

a disbarred Minnesota attorney, who is a Plaintiff in five of these suits. The Plaintiffs' principal contention is that they have a constitutional right to have unlicensed lay counsel assist them in Court proceedings.

The undersigned was not sued in any of the nine assigned civil cases, probably by virtue of this Court's pre-trial rulings in *United States v. Gaar*, Criminal No. 73–B–394 (U.S.D.C., S.D.Tex., 1973). In that case, the Defendant Byron Gaar was indicted for five counts of failure to file income tax returns in violation of 26 U.S.C.A. § 7203.

The Defendant Gaar expressed beliefs similar to those of the members of the American Constitutional Protective Rights Association. He filed a pre-trial motion requesting that Admiral John G. Crommelin, an unlicensed lay attorney, be allowed to assist him in the preparation of his defense. On January 18, 1974, the Court granted that motion and Admiral Crommelin was allowed to sit with Gaar and speak freely in the pre-trial hearings in Gaar's behalf. On September 3, 1974, the day of the trial, the Court informed the Defendant that Admiral Crommelin would not be allowed to speak in front of the jury although the Admiral could still assist Gaar at the counsel table. The Defendant objected to this on the grounds that he had been led to believe that the Admiral would be allowed to carry on his defense in front of the jury and that he was not prepared to represent himself *pro se* on such short notice. The Court gave the Defendant Gaar thirty minutes to re-align his strategy and then proceeded to trial. The Defendant was found guilty on all

counts. He thereafter obtained licensed counsel who filed a Motion for New Trial. Upon reading the transcripts of the pre-trial conferences, the Court felt that it had indeed misled the Defendant to believe that he would be allowed to have Admiral Crommelin represent him in front of the jury. In the interest of justice, the Court granted the Defendant's Motion for New Trial. The matter is presently pending on the trial docket of this Court and is to be tried on November 3, 1975. All of the suits at bar that name the entire federal judiciary as Defendants were filed after the Court allowed Admiral Crommelin to assist the Defendant Gaar in pre-trial matters and before the Court refused to let the Admiral act as an attorney at trial. By striking the undersigned's name off of the xerox copies of the Federal Reporter's "Judges of the Federal Courts" which was attached to these complaints, the Plaintiffs have obviously engaged in a vigorous form of forum shopping.[2]

Eight of the cases to which I have been assigned are discussed below.[3]

### THE LUBBOCK CASE

EDDIE A. TURNER and JEROME DALY v. THE AMERICAN BAR ASSOCIATION, ET AL., CIVIL ACTION NUMBER 5–74–42, IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, LUBBOCK DIVISION

On August 19, 1975, the Plaintiffs, Eddie A. Turner and Jerome Daly,[4] filed their amended antitrust and civil rights Complaint against the following Defend-

---

**2.** The Plaintiffs have stated in their complaints that the names of certain Judges have been struck from the list of Defendants because these Judges "have acquiesced in the rights of the Plaintiffs . . . or there is a reasonable probability that they will recognize these sacred rights". See Original Complaint, *Turner and Daly v. American Bar Association, et al.* and *Pilla and Daly v. American Bar Association, et al.*

**3.** The two remaining cases, *United States v. Turner*, Cr. No. 5–74–5, and *Turner v. Hunt, et*

*al.*, C.A. 5–74–68, filed in the Lubbock Division of the Northern District of Texas, will be treated in separate memorandum opinions.

**4.** These cases are but part of several years' warfare waged by Jerome Daly against the legal and monetary system of this country. For a further background, see the opinion by which he was disbarred, *In re Daly*, 291 Minn. 488, 189 N.W.2d 176 (1971).

458

ants: Chief Justice Warren E. Burger, and Justices Lewis F. Powell, Jr., William H. Rehnquist, Harry A. Blackmun, and Byron R. White, of the United States Supreme Court; virtually all of the Circuit Judges of all circuits; and the Judges of the United States District Courts and the Court of Claims. These Defendants are sued in their capacity as Justices and Judges of the Courts of the United States, and also in their individual private capacity as dues-paying members of the American Bar Association, hereinafter referred to as "ABA", and the various State Bar Associations located throughout the United States.

Also named as Defendants are: The American Bar Association, The State Bar of Texas, Joe R. Greenhill, Ruel C. Walker, Zollie Steakley, Jack Pope, Thomas M. Reavley, Sears McGee, James G. Denton, Price Daniel, Sam D. Johnson, in their capacity as private individuals and as Justices of the Supreme Court of Texas; Dolph Briscoe, in his capacity as Governor of the State of Texas and in his capacity as a private individual; John L. Hill, in his capacity as Attorney General of the State of Texas and in his capacity as a private individual; Frank D. McCown, Edward B. McDonough, Roby Hadden, John E. Clark, in their capacity as United States Attorneys for the various Districts of Texas and as private individuals; Edward Levi, in his capacity as Attorney General of the United States and in his capacity as a private individual; Donald C. Alexander, Commissioner of Internal Revenue and also in his capacity as a private individual; The Tax Court of the United States and Howard A. Dawson, Jr., in his capacity as Chief Judge and in his capacity as a private individual; Chesterfield Smith, in his capacity as a private individual and President of the American Bar Association.

Jurisdiction is asserted under the Northwest Ordinance of 1787, the Magna Carta, the Common Law and the Constitution of the State of Texas, 28 U.S.C.A. §§ 1331, 1343, 2201, 2202, 2281–2284; 42 U.S.C.A. §§ 1981–1989; 15 U.S.C.A. §§ 1–28; 18 U.S.C.A. §§ 2–7, 10, 13, 201–203, 241, 242, 245, 371, 1341, 1503, 1505, and 1509; and Amendments 1, 4, 5, 6, 7, 9, 10, 13 and 14 of the United States Constitution.

The Plaintiffs state that they are members of the American Constitutional Protective Rights Association, that they travel in interstate commerce to aid and assist members of said association in the dissemination of their views and in aid and assistance of each other's constitutional rights; that this is their business and trade; and that they use interstate transportation facilities, mail and public places. They allege that they now have cases or controversies pending before the Courts or that they are about to have such business pending before the Courts and other government agencies.

The Plaintiffs' Amended Complaint is divided up into five loosely drawn causes of action. In their first cause of action, which is the principal cause of action, it is the Plaintiffs' position that the Defendants, their agents and servants and others, have entered into a well-planned and -designed conspiracy to create a monopoly in a so-called "law business" in interstate commerce which has as its end the restraint of the exercise of the following rights of the Plaintiffs: freedom of conscience, freedom of religion, freedom of speech, redress of grievance before government agencies, freedom of association in courtrooms and elsewhere, freedom to choose one's own counsel for court proceedings licensed only by the individual and not by an enemy Bar Association, right to privacy, and freedom of political expression in the courtroom.

In the furtherance of this conspiracy, the Defendants are said to have committed a multitude of overt acts. There appear to be two types of overt acts alleged: general overt acts often performed by unidentified defendants at unidentified locations and specific overt acts wherein the acting defendant and location are clearly described. The general overt acts include: the enactment by the American Bar Association (ABA) of certain Canons of Ethics and Codes of

Professional Responsibility and Disciplinary Rules; the attendance by unidentified judges at undisclosed meetings and the making of statements there to further the monopoly scheme; the restriction of access to law schools; the division of marketing territories along State and county lines; the control by judges and various Bar Associations over attorneys to limit the attorneys' criticism of their conduct in office; the conspiring between judges and prosecuting attorneys to deny effective counsel for defendants in criminal cases; the bribing of the judiciary by the ABA by virtue of the ABA's effort to help obtain increased compensation for the judiciary; the stifling of competition in the law business by setting minimum fees; and the licensing of lawyers to the monopoly practice of law.

The specific overt acts emanate from a pending criminal case against the Plaintiff, Eddie Turner. These acts include the denial by Defendant Federal Judge Halbert O. Woodward of Turner's motion to have the Plaintiff, Jerome Daly, a disbarred Minnesota lawyer, represent him in the criminal case; the appointment of a lawyer inexperienced in criminal tax work to defend Turner; and the appearance by Defendant, United States Attorney McCown and his Assistant, McGlinchey, in Court to oppose Turner's "right" to have a spokesman of his own choice to defend him. The Defendant State Bar of Texas, and the Defendant Justices of the Texas Supreme Court are also cited for enacting various Canons of Ethics and Disciplinary Rules.

The alleged effect of this conspiracy is that the Defendants have established a monopoly of the interstate practice of law in violation of the Sherman Antitrust Act and have additionally deprived the Plaintiffs of their constitutional rights. As relief the Plaintiffs seek the convocation of a Three-Judge Court, declaratory and injunctive relief, a declaration of the invalidity of 18 U.S.C.A. §§ 7 and 13, and Texas Revised Civil Statute 320a–1, The Texas Bar Act, and an injunction prohibiting the future enforcement of these statutes. Plaintiff Turner also seeks damages for injury to his business, person, liberty and life for a sum claimed to be unascertanable but in excess of $500,000 and attorney's fees.

The second cause of action outlined by the Plaintiffs is a "Conspiracy to Violate Civil Rights Along With a Conspiracy to Violate Antitrust Law and Oppression". The Plaintiffs claim that the Defendants have unconstitutionally linked church and State together forming a monopolistic religion where the Judges are self-annointed High Priests and the licensed attorneys are the ministers. The basic tenet of this religion is said to be the overthrow of the Constitution and the establishment of an "oligarchical dictatorship with orchestrated nobility". The religion generates itself through the licensing device whereby no one may represent another in Court unless he too has been annointed to practice in the temple of justice. The Plaintiffs state that this religion is contrary to the protections of the Bill of Rights as they too belong to a religion which has as its basic premise the Declaration of Independence and the Constitution. One of the corollaries of the Plaintiffs' dogma is that since no man has the right to control the life of anyone else, the Defendants cannot, consistent with the Plaintiffs' religious belief, force a litigant to take a licensed attorney when the litigant prefers to have unlicensed lay counsel. The Plaintiffs view this entire practice as a restriction on their right to practice religion and a violation of the concept of the separation of church and State.

The Plaintiffs also make out an equal protection argument based on the fact that many other actors in Court—such as clerks, witnesses and *pro se* litigants—do not have to be licensed to speak in Court. Therefore, it is said to be a denial of equal protection to demand that persons representing others must be licensed attorneys. As damages the Plaintiffs seek an unascertained figure said to be in excess of $1,500,000 and attorney's fees.

Plaintiffs' third cause of action arises under 42 U.S.C.A. §§ 1981, 1983, 1985 & 1986. After re-alleging "all of the foregoing" of the first and second causes of action, the Plaintiffs claim that the Defendants had the power to stop the deprivation of the Plaintiffs' civil rights but have not done so. Thus the Plaintiffs are entitled to recover damages under 42 U.S.C.A. § 1986 in excess of $1,500,000. The Plaintiffs also seek to have the ABA and the State Bar Associations disbanded.

The fourth cause of action re-alleges "all of the foregoing" and proceeds to state the same cause of action as is alleged in the third cause of action, with the only difference being that here the Plaintiffs specifically complain about the monopoly of the law business in interstate commerce. The Defendants are said to have the power to have stopped the monopoly to sell justice but did not, thereby creating a cause of action under 42 U.S.C.A. § 1986 and entitling the Plaintiffs to recover damages in excess of $1,500,000.

The fifth cause of action is asserted by the Plaintiff Jerome Daly alone. He states that were it not for the foregoing monopoly, he could set up law schools in Texas and elsewhere which would net him in excess of $500,000,000. He further states that he has been prevented from practicing his religion and from establishing the Life Science Church, of which he is the Minister, in every state to his damage of $500,000,000. He also seeks injunctive and declaratory relief which would declare null and void and prevent the operation of those statutes which restrict the right of the Plaintiffs to have their own unlicensed spokesman represent them in court proceedings. A Three-Judge Court is requested to declare such statutes void and it is further requested that this Court disband the ABA and the various State Bar Associations.

Plaintiffs request a jury trial[5] and seek damages in excess of $2,000,000,000.

The Defendant Judge Halbert O. Woodward has filed a Motion to Dismiss pursuant to Rule 12(b)(2) and (6), Fed.R. Civ.P., for the reason that the Court lacks jurisdiction over the Defendant Woodward and the Plaintiffs' complaint fails to state a claim upon which relief can be granted. The gist of the Defendant Woodward's motion is that Judges are immune from liability for damages for acts committed within their judicial jurisdiction.

The remaining federal Defendants have also filed a Motion to Dismiss and/or Strike pursuant to Rule 12(b) and (f). These Defendants set forth eight grounds for dismissal: the Court lacks jurisdiction over the subject matter; each of the Defendants is immune from suit; the Court lacks jurisdiction over all of the Defendants who reside outside of the State of Texas; service of process upon all Defendants residing outside of the State of Texas is insufficient; venue of this action is improper; the Complaint fails to state a claim against any of the Defendants upon which relief can be granted; the Complaint contains immaterial, impertinent and scandalous matter; and the maintenance of this action is an abuse of the process of this Court.

The Defendants American Bar Association, the State Bar of Texas, and Chesterfield Smith have filed a Motion to Dismiss and Alternative Motion for More Definite Statement. The basis of their Motion to Dismiss is that the Court lacks subject matter jurisdiction, that venue is improper, that the Plaintiffs' Complaint fails to state a claim against the Defendants upon which relief can be granted, that the Plaintiffs' Complaint is frivolous in its entirety, and that the Complaint is a sham. In the alternative, these Defendants have moved this Court for more definite statement of the Com-

---

**5.** In seven of the eight cases covered by this opinion, the Plaintiffs have requested a jury trial. In *Pendell, Pendell and Daly v. Ameri-* can Bar Association, et al., the Plaintiffs did not request a jury trial.

plaint. They have also moved that this Court issue an injunction against the commencement of similar litigation.

The Defendant Justices of the Supreme Court of Texas and the Defendant Attorney General of Texas have filed a Motion to Dismiss or, in the alternative, a Motion for More Definite Statement. As grounds for their motion, they allege that the Court lacks jurisdiction, that venue is improper, that the complaint fails to state a claim upon which relief can be granted and that the complaint is so vague or ambiguous that the Plaintiffs should be required to file a more definite statement.

Chief Judge John R. Brown of the Fifth Circuit designated the undersigned to sit in this case on May 6, 1974.

## THE PENNSYLVANIA CASE

### RAYMOND M. HARTMAN and JEROME DALY v. THE AMERICAN BAR ASSOCIATION, ET AL., CIVIL ACTION NUMBER 74–480, IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

On May 21, 1974, the Plaintiffs, Raymond M. Hartman and Jerome Daly, filed this civil antitrust action in the United States District Court for the Western District of Pennsylvania. The federal judicial Defendants are the same as those named in the Lubbock American Bar case discussed at length above.[6] The ABA is also named as a Defendant as is Chesterfield Smith, John Doe and Richard Roe. Additional Defendants named in this case include George Washington and George Washington, Jr., who are licensed attorneys in the practice of law in Oklahoma; Richard L. Thornburgh, United States Attorney for the Western District of Pennsylvania;

Thomas A. Daley, Assistant United States Attorney; John P. Hines, Trial Attorney, Tax Division, Department of Justice; and Thomas Plasko, Special Agent, Department of Justice.

The general contours of the conspiracy, the general overt acts alleged, and the purpose and effect of the conspiracy are substantially similar to the Lubbock American Bar case. It is in the specific overt acts that this case differs from the Lubbock American Bar case. Apparently the Plaintiff Raymond M. Hartman has filed a civil action against C. W. Switzer in the Western District of Pennsylvania, Civil Action No. 730788. In that suit, Plaintiff Hartman moved the Court to allow the Plaintiff Jerome Daly, a person not licensed by any Court but only licensed by the Plaintiff Hartman, to be and act as counsel and spokesman for Plaintiff Hartman in the Switzer suit. Said motion was denied without opinion by Judge John Miller on February 4, 1974. The Plaintiffs allege that this denial of the Plaintiff Hartman's motion was an overt act in the furtherance of the grand conspiracy.

In a second and unrelated incident, the Defendants George Washington and George Washington, Jr. advised the Pennsylvania Bar Association that Jerome Daly, in a case in which they were once retained as counsel, had been practicing law without a license in the State of Pennsylvania, and suggested that he be criminally prosecuted. Hence, the second set of overt acts complained of in furtherance of the restraint of commerce conspiracy deal with the writing of that letter by George Washington and George Washington, Jr. Third, the Plaintiffs complain that the Judges of the United States District Court of the Western District of Pennsylvania overtly acted in

---

**6.** The statement is categorical. In this case, the same broad classes of Judges were sued, i. e. the District Judges of all Circuits, as were sued in the Lubbock American Bar case, *Turner and Daly v. American Bar Association, et al.* There are some differences as to individual Defendant Judges. The Judges of the United

States Court of Customs and Patent Appeals and the Judges of the United States Customs Court were also named as Defendants in this suit. They were not sued in the Amended Complaint filed in the Lubbock American Bar case.

furtherance of the conspiracy by setting minimum fees in personal injury litigation in violation of the Constitution and the Sherman Antitrust Act. Fourth, the United States Attorney Richard Thornburgh, Assistant United States Attorney Thomas Daley, and Tax Division Attorney John P. Hines have spoken out in open Court in opposition of Jerome Daly's practice of law and that the Defendant Judge John Miller and Defendant Judge Daniel Snyder aided and encouraged these conspiratorial acts by excluding Jerome Daly or anyone else not licensed from practicing before them. Fifth, that the Defendant Judge Miller and the Defendants Thornburgh, Daley, and Plasko caused the arrest of Jerome Daly in Pittsburgh, Pennsylvania, in order to bring him into general disrepute in the community in furtherance of the conspiratorial monopoly herein alleged.

The federal Defendants, including all of the named federal Judges, the federal attorneys, and Special Agent Thomas Plasko, have filed a Motion to Dismiss and/or Strike, in which they assert the same eight grounds as asserted by the federal Defendants in the Lubbock American Bar case.

The Defendants ABA and Chesterfield Smith have filed a Motion to Dismiss and/or Strike, alleging the following grounds: the complaint fails to state a claim against these Defendants upon which relief can be granted; lack of subject matter jurisdiction; inadequate showing of venue; the complaint contains immaterial, redundant and scandalous matter; the Defendants ABA and Chesterfield Smith are not proper parties; the complaint fails to meet the standards of Rule 8, Fed.R.Civ.P., requiring that a complaint contain a short, plain statement showing that the Plaintiffs are entitled to relief; the complaint is signed without valid grounds to support the allegations therein; and the complaint is an abuse of the process of this Court.

Chief Justice Warren E. Burger designated the undersigned to sit in this case in August, 1974.

## THE INDIANA CASES

LORAN L. TAYLOR and JEROME DALY v. THE AMERICAN BAR ASSOCIATION, ET AL., CIVIL ACTION NUMBER S74–84, IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA, SOUTH BEND DIVISION

On April 8, 1974, the Plaintiffs Loran L. Taylor and Jerome Daly filed this civil antitrust action against the same federal judicial Defendants as were sued in the Lubbock American Bar case,[7] and have similarly sued the American Bar Association and Chesterfield Smith. Additionally named as Defendants are the Indiana State Bar Association, State Circuit Court Judge John Montgomery, Justices Norman F. Auterburn, Roger O. DeBruler, Richard M. Givan, D. H. Hunter, and Dixon W. Prentice, who are all members of the Supreme Court of Indiana, and are members of the Indiana and American Bar Associations; Attorney General of the United States William Saxbe, Assistant Attorney General of the United States Scott P. Crompton, Chief of General Litigation Section, Tax Division of the Department of Justice, John J. McCarthy, and Tax Division Attorney Richard H. Scully of the Department of Justice; and John Doe and Richard Roe.

The first section of the Complaint setting out the general contours of the restraint of trade in the so-called law business is similar to the principal conspiracy of the Lubbock American Bar case.

The second section of the Complaint sets out overt acts which are specific to this case. The background of this and the next case, *Taylor v. Montgomery, et al.*, may be summarized as follows: in December of 1972, the Plaintiff Loran L. Taylor, a proctologist, and his wife, Florence Taylor, borrowed $29,350.00 from The National Bank and Trust Company of South Bend. The note was to be repaid at the rate of $1,000.00 a month. The Plaintiff Loran Taylor made one payment and thereafter defaulted.

---

7. See Footnote 6.

Seeking to recover its money, the bank brought suit against Loran and Florence Taylor in the Court of the Defendant State Judge John Montgomery; during the course of that proceeding, the Plaintiff Taylor requested that one Bill Dobslaw, an unlicensed lay attorney, be allowed to aid and assist him at the counsel table and to act as his spokesman in that proceeding, which request was refused. In that same suit, Dr. Taylor was found to be in contempt of Court and was sentenced to fourteen days in jail. On February 8, 1974, Loran Taylor filed suit in the South Bend Division of the United States District Court of the Northern District of Indiana against Judge John Montgomery, Judge Joseph Nyikos, the bank's attorney, James Nafe, the Sheriff of St. Joseph's County, Dean Bolerjack, and the bank that held his note, The National Bank and Trust Company. The basis of that action, which will be discussed more fully below, was an alleged deprivation of civil rights under color of state law. The case was assigned to the Defendant Federal Judge George Beamer.

During the pendency of that federal suit, the Plaintiff Taylor requested that Jerome Daly be allowed to act as his counsel, which request was denied on March 29, 1974. A few days later, the Plaintiffs Taylor and Daly filed their American Bar suit in the same court.

The specific overt acts alleged relevant to this suit are based on the foregoing history and include: the refusal of Defendant Judge John Montgomery to allow Bill Dobslaw to act as Dr. Taylor's counsel in the state suit, the participation by the Defendant Justices of the Supreme Court of Indiana in American Bar Association and Indiana State Bar Association meetings designed to monopolize the so-called law business, the promulgation by all of the Defendants of the doctrine of judicial immunity to cloak them from their illegal acts, the refusal by Defendant Federal Judge George Beamer to allow Jerome Daly to act as counsel for Plaintiff Taylor in the aforementioned federal suit against the State Judges and the bank, the fixing of fees and the creation of a list of attorneys allowed to practice in criminal cases, the steering by Defendant Federal Judge George Beamer of the first federal case to Federal Judge Jesse E. Eschbach following the Defendant Beamer's recusal from litigation in his Court involving the State Judges and the bank. The Defendant Beamer stated that said recusal was based on the fact that he is a personal friend of State Judges Montgomery and Nyikos. The Plaintiff Taylor claims that the case was assigned to Judge Eschbach because the Defendant Federal Judge Beamer knew that he would get a result in favor of his friends from Judge Eschbach. It is of note here that Judge Beamer was the Chief Judge of the Northern District of Indiana and Judge Eschbach was next in line in seniority by one day. Hence, Judge Eschbach was the natural choice to receive a case for reassignment from which the Chief Judge had recused himself. Also complained of and alleged as an overt act is the filing by the Defendants Scully, McCarthy, Crompton, and Saxbe of a Motion to Dismiss on behalf of the Tax Court Judges and other government Defendants in *Hartman and Daly v. Tannenwald*, Civil Action No. 74–126, filed in the Western District of Pennsylvania. The Plaintiff claims that this filing was in furtherance of the conspiracy in direct opposition to their oath to support the Constitution of the United States and the Sherman Antitrust Act.

Plaintiffs request a jury trial and demand recovery in the sum of $14,000,-000.00, to be paid in nothing other than gold and silver coins.

The Defendant State Judge John Montgomery has filed a Motion to Dismiss him from the litigation based on Rules 11 and 12, Fed.R.Civ.P. The substance of his Motion is that the Complaint states scandalous, redundant, immaterial and impertinent matter, that he, as a Judge, is immune from suit from any act performed within his jurisdiction, and that the Complaint fails to demonstrate that the Plaintiffs were damaged by any of the Defendant's acts.

The Defendant Indiana State Bar Association has filed a Motion to Dismiss pursuant to Rules 8, 11, and 12, Fed.R. Civ.P. The basis of its Motion is that the Complaint is not a short, plain statement as required by the Rules, that it contains scandalous matter, and that it is a sham.

The Federal Judicial Defendants, as well as the Department of Justice Defendants, have filed a Motion to Dismiss and/or Strike, alleging the same grounds for dismissal set forth by the Federal Judicial Defendants in the Lubbock American Bar case.

The Defendant State Supreme Court Justices Arterburn, DeBruler, Givan, Hunter, and Prentice have moved this Court to dismiss the Complaint as to them for the following reasons: lack of subject matter jurisdiction inasmuch that this action is in essence an action against the State of Indiana, and since the action seeks monetary damages only, it is barred by the Eleventh Amendment to the United States Constitution; judicial immunity; the inapplicability of federal antitrust laws to Federal and State Court rules per *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943); the right to be represented by unlicensed advocates is not enshrined in the Constitution of the United States; failure to exhaust proper remedies for injuries they claim to have suffered as a result of improper or invalid Court orders; and failure to allege a case or controversy within the intendment of Article III of the United States Constitution, in that the Complaint fails to show how any injury, if any, suffered by the Plaintiffs is attributed to the alleged wrongs. These Defendants have also filed a Motion to Strike the entire Complaint on the basis that it fails to contain a short and plain statement of the claim showing that the pleader is entitled to relief as required by Rule 8(a), Fed.R.Civ.P., and on grounds that the Complaint contains impertinent and scandalous matter.

The Defendants American Bar Association and Chesterfield Smith have moved the Court to Dismiss this Complaint on the following grounds: lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, presentation of nonjusticiable, political questions, improper service on the Defendant Chesterfield Smith, improper venue, and failure to comply with Rule 8, Fed.R.Civ.P.

Chief Justice Warren E. Burger designated the undersigned to sit in this case on June 14, 1974.

LORAN L. TAYLOR v. JOHN MONTGOMERY, ET AL., CIVIL ACTION NUMBER S74–29, IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA, SOUTH BEND DIVISION

In this action the Plaintiff Loran L. Taylor has filed suit against State Judges John Montgomery and Joseph Nyikos, Sheriff Dean Bolerjack, The National Bank and Trust Company, and its attorney, James Nafe. Jurisdiction is claimed to arise under the Constitution and laws of the United States and more specifically Articles 3, 4, 6, and Amendments 1, 4, 5, 6, 7, 9, 10, 13, and 14 of the Constitution of the United States, 28 U.S.C.A. § 1343, 15 U.S.C.A. §§ 1–7, and 42 U.S.C.A. §§ 1981 through 1989. The Plaintiff asserts two separate causes of action. The first is that named Defendants did conspire to deprive Plaintiff of his right to appear before Court with counsel of his own choosing. Included in this first cause of action is a full-scale attack on the Plaintiff's contempt conviction referred to earlier. He states that there is no basis in law or in fact for a contempt of Court citation, that the Plaintiff was not apprised of the right that he could have counsel appointed by the Court to defend him, that he was deprived of his right to a trial by jury in the contempt proceeding, that the Plaintiff did not have compulsory process to obtain witnesses in his favor, that the Plaintiff was jailed without a warrant and without any legal process, that The National Bank and Trust Company and its counsel, Nafe, extorted

$2,000.00 out of the Plaintiff before he could be released from jail, that the Defendant bank, Nafe, and Judge Montgomery conspired to deprive Plaintiff of his rights against self-incrimination, and that the Plaintiff was criminally punished because he would not surrender his Fourth, Fifth, and Fourteenth Amendment rights.

In his second cause of action, the Plaintiff alleges a conspiracy among the Defendants, and the licensed attorneys and Judges of the Indiana State Bar Association and the American Bar Association to impede and restrain freedom of speech, the right to peacefully assemble in the Courts of the United States, the right to petition the government for redress grievances with a spokesman of their own choice, all in violation of the Declaration of Independence, the First, Fourth, Fifth, Sixth, Ninth, Tenth, Thirteenth, and Fourteenth Amendments to the Constitution, and the Sherman Antitrust Act, 15 U.S.C.A. § 1 *et seq.* The Plaintiff further contends that the conspiracy is supported and furthered by the "*Canons of Ethics* and *Disciplinary Rules of Professional Responsibility*," and fee fixing. The Plaintiff points out that one of the net effects of this conspiracy is that he was forced to purchase legal fees and services from a member of the monopoly in the conspiracy above alleged at an unreasonably high and fixed price. Upon being jailed, the Plaintiff alleges that the Defendant Bolerjack, Sheriff of St. Joseph County, in furtherance of the conspiracy, would not let anyone, even the Plaintiff's wife, in the jail to see and consult with the Plaintiff except an attorney licensed by the said conspiracy. He further alleges that the Defendant Judges and lawyers along with other co-conspirators have established an oligarchical dictatorship with an orchestrated nobility, whose basic purpose is to overthrow the Constitution of the United States, and that as a direct and proximate result of this conspiracy and other violations of the Sherman Antitrust Act, the Defendants have effectively denied Plaintiff access to the Courts. Plaintiff

seeks over $2,000,000.00 in damages and demands that it be paid in nothing other than gold and silver coins.

The Defendants have filed identical Motions to Dismiss or in the Alternative for Summary Judgment. The grounds for their Motions are that the Complaint states nothing more than vague and conclusionary allegations, that the Civil Rights Acts do not create a cause of action for false imprisonment, that the Plaintiff has failed to exhaust his state remedies, and that the Defendant Judges are protected by judicial immunity.

The Plaintiff has filed an instrument which announces his intention to move the Court to allow him to have Jerome Daly, a person not licensed to practice law by any Court, or if he is unavailable, then any other person not licensed to practice by any Court, but only licensed by the Plaintiff, appear for the Plaintiff and to speak for him in all future proceedings before the Court. His notice contains a written statement by Jerome Daly that he consents to appear with the Plaintiff Taylor to aid him and to speak in his behalf.

This case was assigned to the undersigned by Chief Justice Warren E. Burger on July 24, 1974.

LARRY S. PENDELL, BARBARA A. PENDELL, and LORAN L. TAYLOR v. THE AMERICAN BAR ASSOCIATION, ET AL., CIVIL ACTION NUMBER S75–74, IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA, SOUTH BEND DIVISION

On April 14, 1975, Plaintiffs Larry S. Pendell, Barbara A. Pendell, and Loran L. Taylor filed suit against the American Bar Association, the Indiana State Bar Association, United States District Judge Robert A. Grant, and Indiana State Judges Aldo Simpson, Charles Hughes, Stanley Raymer, James A. Simpson, Frank Algate, Lee Mellinger, John Doe, and Richard Roe. Jurisdiction is predicated upon the Sherman Antitrust Act, 15 U.S.C.A. §§ 1–28, and 42 U.S.C.A.

§ 1983 and § 1985. The allegations contained in the Complaint are similar to the Lubbock American Bar case although this Complaint is much more streamlined and less prolix than the Lubbock Complaint.

The overt acts particular to this lawsuit derive from the denial by Defendant State Judge Aldo Simpson of a motion filed by the Plaintiff Larry Pendell to permit Jerome Daly to represent him in a State Court proceeding.

The Defendant State Judges have filed similar Motions to Dismiss alleging that the Court lacks subject matter jurisdiction, and that the Complaint fails to state a claim upon which relief can be granted. They have also filed a Motion to Strike on the ground that the Complaint fails to comport with the requirements of Rules 8(a) and 8(e) and 12(f).

The Defendant American Bar Association and the Defendant Indiana State Bar Association have filed similar Motions to Dismiss and/or Strike on the grounds that the Complaint fails to state a claim upon which relief can be granted, and that the Complaint is in violation of Rules 8(a)(2) and 8(e)(1) and 12(f), Fed.R.Civ.P., and Local Rule 6(a).

The Defendant Federal Judge Robert A. Grant has filed a Motion to Dismiss or in the Alternative for Summary Judgment. The Motion is premised on the following grounds: failure to state a claim upon which relief can be granted, lack of subject matter jurisdiction, judicial immunity, *res judicata,* abuse of process, improper venue, and insufficient service of process. Additionally, this Defendant had requested an injunction against any future similar litigation against federal officials.

The Chief Justice Warren E. Burger assigned this case to the undersigned on May 15, 1975.

## THE MINNESOTA CASE

DANIEL M. PILLA and JEROME DALY v. THE AMERICAN BAR ASSOCIATION, ET AL., CIVIL ACTION NUMBER 4–74–190, IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA, FOURTH DIVISION

On April 8, 1974, the Plaintiffs, Daniel M. Pilla and Jerome Daly, citizens of the State of Minnesota, brought this civil antitrust action against the following Defendants: the same federal judicial Defendants that were sued in the Lubbock American Bar case,[8] Minnesota Supreme Court Justices Oscar R. Knutson, Robert J. Sheran, Fallon Kelley, Harry H. MacLaughlin, James C. Otis, Donald Peterson, Walter F. Rogosheske, George M. Scott, John Todd, Lawrence R. Yetka, individually and as Justices of the Minnesota Supreme Court; Minnesota District Court Judges John M. Fitzgerald, Robert Breunig, Lawrence Lenertz, Irving C. Iverson and Luther Sletten; Minnesota Attorney General Warren Spannaus; United States Magistrates Earl Cudd and George McPartlin; Clerk of the United States Court of Appeals for the Eighth Circuit Robert C. Tucker; Former United States Attorney Patrick Foley; United States Attorney Robert Renner; Commissioner of Internal Revenue Donald C. Alexander; United States Probation Officers Don Kostohryz and James A. Zuehl; Deputy Minnesota Attorney General C. H. Luther; Former Commissioner of Internal Revenue Johnny Walters; Oklahoma lawyers George Washington, Sr. and George Washington, Jr.; counsel and members of the Ethics Committee of the Minnesota State Bar Association Craig W. Gagnon, George Ramier, Herbert C. Davis, C. Donald Odden, Richey B. Reaville; Assistant Administrator Minnesota State Board of Professional Responsibility Robert H. Meier; Director of Professional Responsibility Minnesota State Bar and Former Counsel for the First National Bank of St. Paul, Paul R. Sharood; John Friedrich and Ralph Fosseen, believed to be Minnesota State Judges; Hyman Edelman, at present unidentified; the American Bar Association and Chesterfield Smith; the Minnesota Bar Association;

8. See Footnote 6.

John Doe and Richard Roe. All of the above are named in their capacity as individual private citizens, but a close reading of the complaint shows that the State and federal Defendants are also being sued for acts carried out in their official capacities.

The first section of the complaint setting forth the general contours of the conspiracy to monopolize the so-called law business and the overt acts carried out in the furtherance thereof is similar to the principal conspiracy alleged in the Lubbock American Bar case. The second section alleges overt acts specific to this lawsuit; the acts complained of are somewhat foggy and it is not at all clear who did what and why. These overt acts include the refusal of various State Court Judges, State Supreme Court Justices, Federal District Judges, Federal Appellate Judges, and the Department of Treasury to allow the Plaintiff Daly or anyone else not licensed by them to practice before them; the conspiratorial disbarment of the Plaintiff Daly by the Minnesota State Bar Association, accomplished in part to further an alleged stock fraud scheme; rulings adverse to the Plaintiff Daly by various State and Federal Judges in judicial proceedings in which he was involved, including several findings of contempt; a concerted cooperative effort by banks, corporations and the Minnesota Supreme Court to illegally control the Minnesota State Bar Association in the furtherance of their own private illegal interests; I.R.S. and judicial harassment of the Plaintiff Daly and others in the exercising of their rights to petition their government for redress of grievances and peaceably assemble by means of arrest and infiltration of their meetings; and the unconstitutional levying of a tax by the Minnesota Supreme Court on practicing attorneys.

The Federal Defendants, including all of the named Defendant Federal Judges and their named Defendant supporting personnel, the named Department of Justice Defendants, and the Commissioner and Former Commissioner of Internal Revenue, have filed a Motion to Dismiss and/or Strike, alleging eight grounds identical to those alleged by the Federal Judicial Defendants in the Lubbock American Bar case.

The Defendants Ramier, Davis and Edelman have filed a Motion to Dismiss and/or Strike, alleging that the complaint fails to state a claim against any of these Defendants on which relief can be granted, the complaint contains impertinent and scandalous matter, and the maintenance of the action is an abuse of the process of the Court.

The Defendants George Washington and George Washington, Jr., Oklahoma attorneys, have filed a Motion to Dismiss, stating that the complaint fails to state a cause of action against them.

The Defendants ABA and Chesterfield Smith have filed a single instrument which is a combination of a Motion to Dismiss, Motion to Strike and Motion for Summary Judgment. These Defendants say that the complaint should be dismissed on the grounds that it fails to state a claim upon which relief can be granted; that the complaint should be struck on the grounds that it is a sham, an abuse of the process of this Court and consists entirely of redundant, immaterial or scandalous matter; in the alternative, these Defendants seek a summary judgment on the grounds that there is no genuine issue of material fact and that these Defendants are entitled to judgment as a matter of law.

The State Judicial Defendants, the Defendants associated with the State Attorney General's office, and those presently or formerly associated with the Minnesota State Board of Professional Responsibility have filed an instrument which announces their intent to file at some future unspecified date a Motion to Dismiss on the grounds that this Court lacks subject matter jurisdiction and that the complaint fails to state a claim upon which relief can be granted.

The Plaintiffs seek many millions of dollars worth of damages and have requested a jury trial.

The undersigned was designated to hear this case by Chief Justice of the United States, Warren E. Burger, on June 14, 1974.

## THE ALABAMA CASE

### NOAH JEFFERSON CARDEN v. WILLIAM BREVARD HAND, ET AL., CIVIL ACTION NUMBER 74–426, IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA

On October 10, 1974, the Plaintiff, Noah Jefferson Carden, filed suit against the following Defendants: United States Supreme Court Justices Warren E. Burger, Lewis F. Powell, Jr., Potter Stewart, William H. Rehnquist, Harry A. Blackmun, Byron R. White and Thurgood Marshall; virtually all of the Judges of the Fifth Circuit; Justices Howell T. Heflin, Pelham Jones Merrill, James Samuel Coleman, Robert Bernard Harwood, James Nelson Bloodworth, Alva Hugh Maddox, Daniel Thompson McCall, Sr., James Hardin Faulkner and Richard L. Jones of the Supreme Court of Alabama; present and former Justices of the Minnesota Supreme Court Robert J. Sheran, Oscar R. Knutson, Walter F. Rogosheske, Martin A. Nelson and Thomas Gallagher; Federal Judges Miles W. Lord and Edward J. Devitt of the District of Minnesota; United States Attorney for the Southern District of Alabama C. S. White-Spunner, Jr.; United States Magistrate Allan R. Cameron; I. R. S. Regional Counsel Henry C. Stockell; the ABA and its former President, Chesterfield Smith; The Alabama Bar Association and its President, Roland Nachman; and attorneys M. Lloyd Roebuck and Doyle Coats.

The complaint alleges a conspiracy substantially similar to the principal conspiracy of the Lubbock American Bar case. There appear to be two sets of overt acts particular to this case: the first being that the Defendant State Bar and its President and the Chief Justice of the Alabama Supreme Court, Howell T. Heflin, spearheaded a drive to reform or overthrow the Alabama State Constitution.

The second set of overt acts particular to this complaint deals with the refusal of Defendant Federal Judge William Brevard Hand to allow the Plaintiff Carden to have Admiral Crommelin represent him in *United States v. Carden,* Criminal No. 74–1, Southern District of Alabama. Following this action, Defendant Federal Judge Hand questioned a court-appointed attorney, the Defendant Roebuck, as to his ability to represent Plaintiff Carden in this criminal matter. Defendant Roebuck stated that he was completely unfamiliar with, and inexperienced in Federal Income Tax cases. The Defendant Judge Hand nevertheless ordered Defendant Roebuck to represent Plaintiff Carden in the criminal tax case.

It is further alleged that the Plaintiff has been harassed by the I.R.S. and the F.B.I.

The complaint also refers to the history of Jerome Daly's disbarment, his subsequent arrest and the Court's alleged participation in a stock rigging—land confiscation scheme involving church bonds of the Lutheran Church. Individually cited as co-conspirators are Defendant Judge Devitt, who excluded Daly from practicing after his disbarment, the Defendant Minnesota Supreme Court Justices who disbarred him, and Defendant Federal Judge Frank Johnson, who refused to allow Daly to appear as counsel following his disbarment in the case of one Charles Muncaster. The Minnesota Bar Association which is cited for conspiring with Defendant Judges Johnson, Lord and Devitt, is likewise named as a co-conspirator.

In addition to the Sherman Antitrust Act, 15 U.S.C.A. § 1 et seq., the Plaintiff has invoked 42 U.S.C.A. §§ 1983, 1985 and 1986, the United Nations Charter, United Nations Law, the International Monetary Fund and the Brenton Woods Agreement. Plaintiff seeks damages in the millions to be paid only in gold and silver.

The Defendant Nachman has filed a Motion to Strike and Motion to Dismiss on the grounds that the complaint as a whole is immaterial, impertinent, redundant and contains scandalous and prolix matters. In the alternative, seeking to dismiss, he states that this Court lacks jurisdiction over the subject matter, the complaint fails to state a claim upon which relief can be granted, and that the venue is improper.

The Defendant Roebuck has filed a Motion to Dismiss on the grounds that no cause of action is stated against him, the complaint fails to state a claim upon which relief can be granted, that the Defendant Roebuck is immune, and that this action is barred by the Doctrine of Res Judicata by virtue of the finding that a previous similar complaint failed to state a claim upon which relief could be granted, *Carden v. Roebuck,* Civil Action Number 74–305–P, filed in the Southern District of Alabama.

The Defendant Justices of the Supreme Court of Alabama have filed a Motion to Strike and Dismiss. They claim that the whole complaint should be struck as it contains redundant, immaterial, impertinent and scandalous matters, that the complaint has not been signed by the Plaintiff. Alternatively, they move to dismiss this complaint for failure to state a claim as against these Defendants; they also allege that venue is improper.

The Defendant Justices of the Minnesota Supreme Court have filed a Motion to Dismiss. It is their position that the Court does not have *in personam* jurisdiction over these Minnesota Justices for the reason that extraterritorial service over them was either unauthorized or ineffective.

The American Bar Association, Alabama State Bar Association, and Chesterfield Smith have filed a Motion to Dismiss on the grounds that the complaint fails to state a claim against these Defendants upon which relief can be granted, that any claim is barred by the one-year statute of limitations, Alabama Code, Tit. 7, §§ 26–31, and by equitable principles of laches, that there is a lack of subject matter jurisdiction, that there is no justiciable controversy between the Plaintiff and Defendants, and that the complaint is frivolous and insubstantial.

The Federal Defendants have filed a Motion to Dismiss on the grounds that the complaint fails to state a claim upon which relief can be granted, the Court lacks subject matter jurisdiction, the action is barred by *res judicata,* and the Federal Court lacks *in personam* jurisdiction over the Federal Defendants residing outside of the State of Alabama. The Federal Defendants have filed a brief in which they raise additional points in support of their Motion to Dismiss: judicial immunity, failure to state a short and plain cause of action pursuant to Federal Rule 8, *Res Judicata,* lack of *in personam* jurisdiction, and frivolous abuse of process.

The Defendant Federal Judges Newell Edenfield, Albert J. Henderson, Jr., Frank A. Hooper, William C. O'Kelley, Charles A. Moye, Jr., Sidney O. Smith, Jr., Richard C. Freeman and Defendant I. R. S. Counsel Stockell all have filed an Answer. In it they allege that the Court lacks subject matter jurisdiction and *in personam* jurisdiction, that the complaint fails to state a cause of action upon which relief can be granted and that these Defendants are entitled to a judicial immunity. In addition, they deny that they engaged in any conspiracy to infringe upon the Plaintiff's rights.

The Plaintiff has stated on the record that since the Defendants are sued in their private capacity he objects to the use of public money to defend Defendants.

Chief Justice Warren E. Burger designated the undersigned to sit in this case on December 18, 1974.

## THE WISCONSIN CASE

THOMAS F. STOCKHEIMER and JEROME DALY, ET AL. v. THE AMERICAN BAR ASSOCIATION, ET AL., CIVIL ACTION NUMBER 75-C-182, IN THE UNITED STATES DISTRICT COURT, FOR THE WESTERN DISTRICT OF WISCONSIN

On April 29, 1975, the Plaintiffs filed this civil rights—antitrust action against the American Bar Association and the State Bar of Wisconsin, United States Attorney General Edward Levi, and United States Attorney for Wisconsin, David C. Mebaine, Wisconsin Governor Patrick Lucy, and State Attorney General Bronson C. LaFollette, and State District Attorneys Robert W. Wing, Thomas P. Haughian, and Owen Williams; State Supreme Court Justices Horace W. Wilke, Bruce Beilfuss, Nathan S. Heffernan, Leo B. Hanley, Connor T. Hansen, Robert W. Hansen, and Roland B. Day; State Judges William McEwen, Marshall Norseng, James H. Levi, A. Don Zvwickey, Nathan E. Wiese, John G. Bartholomew, Thomas H. Barland, Joseph W. Hughes; and LeRoy L. Dalton, Warren H. Resh, and John B. McCarthy, believed to be Wisconsin attorneys. The conspiracy alleged is substantially similar to the conspiracy set out in the Lubbock American Bar case. The overt acts particular to this case arise from the Court's refusal in several instances to let the Plaintiffs have unlicensed counsel of their own choosing.

The Plaintiff Peterson is the Pastor of the Basic Bible Church of Minneapolis which has as its basic precept the Constitution of the United States, with the exception of the Sixteenth Amendment, and what is called a basic law of nature that every man has a right over his own life, that he has no right over the life of anyone else, and that no one else has a right over his life. Apparently from this precept springs forth their interpretation of the Constitution that anyone may freely choose another to represent him in court proceedings. In the federal criminal proceeding against Peterson, Peterson apparently sought to have Daly represent him, which was opposed by the Defendant Mebaine in furtherance of the conspiracy.

The Plaintiff Haase now has a case pending before the United States District Court in Wisconsin, seeks to have an assistant and spokesman of his own choice to help him, but cannot because of statutes prohibiting the unlicensed practice of law. He claims injuries to his business and property in excess of $100,000.00.

The Plaintiff Graf seeks to make use of the Courts with the aid of the Plaintiff Haase as his assistant and spokesman but cannot because of the unauthorized law practice statutes and claims that his business and property have been damaged in excess of $100,000.00.

The Plaintiffs Ramsden and Johnson are attempting to make use of the Courts but have been prohibited from using spokesmen of their own choice by the unauthorized practice statutes. They also seek damages in excess of $100,000.00.

The Plaintiffs state that the people did not intend that there would be restrictions on the right of citizens to appoint and select their own counsel and allege that many actors on the political arena, including United States Judges, United States Attorneys, the Attorney General, the President, Members of Congress, Federal Officers, witnesses, the Clerk, and jurors do not have to be lawyers to appear and practice in Court, nor does one have to be a lawyer to represent himself in Court. Therefore, they claim it is a violation and a denial of equal protection of law to require that a litigant have a licensed lawyer to represent him if he does not want to represent himself. This constitutes the basic conspiracy under § 1983. The allegation under § 1985 is that the Defendants, with the knowledge of the wrongs conspired to be done, have failed to prevent these wrongs when it was within their power to do so as required by 42 U.S.C.A. § 1986.

Plaintiff Burich, presently involved in a criminal proceeding in the State Court, is presently being deprived of his right to have unlicensed counsel by the denial of his request to have Daly represent him in State Court. Burich seeks damages in excess of $100,000.00 against the Defendants Levi, Zvwickey and Wiese who supposedly conspired in denying his request.

The Defendant American Bar Association has filed a Motion to Dismiss pursuant to Rule 12(b) and it alleges as grounds therein: lack of subject matter jurisdiction, insufficiency of service, failure to state a claim upon which relief can be granted, the Complaint is redundant, immaterial, impertinent, and scandalous; failure to comply with the requirements of Rules 8, 11, and 12. The American Bar Association has filed a Motion to Tax Costs and a Supporting Memorandum.

The Defendants State Bar of Wisconsin, the Governor, the State Attorney General, the State District Attorneys, and Defendant State Judges have filed an Answer denying the existence or their participation in any conspiracy to deprive the Plaintiffs of their constitutional rights.

These Defendants have also filed a series of Motions to Dismiss on the following grounds: immunity of Judge and Prosecutor, the unripeness of claims presented in the Complaint, and failure by the Plaintiffs Odell, Iwen, McNeely, and Svee to present a claim upon which relief can be granted as these Plaintiffs demonstrated no individual harm in the Complaint.

The Federal Defendants have filed a Motion to Dismiss and/or Strike claiming that this Court lacks subject matter jurisdiction, that the Court lacks *in personam* jurisdiction over Defendants who do not reside in Wisconsin, that the Complaint fails to state a claim against these Federal Defendants upon which relief can be granted, that the Complaint is an abuse of process, and that venue is improper.

The Plaintiffs have filed a Brief in Opposition to these Defendants' Motions.

On June 24, 1975, the undersigned was assigned to this case by Chief Justice Warren E. Burger.

There are still other similar cases pending around the country which have been assigned to other judges. At this writing, at least seven of these other cases have been dismissed and injunctions against similar litigation have been issued in two of them.[9]

---

**9.** *Grismore et al. v. Burger et al.,* C.A. C–75–59, filed in the District of Utah. Dismissed on August 20, 1975, for failure to state a claim within the jurisdiction of the Court. The complaint was found to be frivolous, abusive, in bad faith and vexatious and an injunction was issued against future litigation of the questions presented.

*Adams et al. v. American Bar Association et al.,* 400 F.Supp. 219, filed in the Western District of Pennsylvania. Dismissed on August 19, 1975, for failure to state a claim upon which relief could be granted. In one of the few opinions that even attempted to deal with the merits, the Court examined the rights asserted by the Plaintiffs and found them to be without merit. Noting similar litigation and the vexatious nature of the suits, the Court enjoined future litigation.

*Afflerbach et al. v. American Bar Association,* 401 F.Supp. 108, filed in the District of Wyoming. Dismissed on August 14, 1975, under the inherent powers of a Court to control its docket. The complaint was found to be frivolous, malicious, disruptive to the processes of justice, and harassing.

*Butler and Daly v. American Bar Association,* C.A. 75–C–72, filed in the Northern District of Illinois. Dismissed on January 9, 1975, for failure to state a claim within the jurisdiction of the Court.

*Carden v. Roebuck et al.,* C.A. 74–305, filed in the District of Alabama. Dismissed on July 22, 1974, for failure to state a claim upon which relief could be granted.

*Hartman and Daly v. Tannenwald et al.,* C.A. 74–126, filed in the Western District of Pennsylvania. Dismissed on May 30, 1974, for "all seven reasons listed in Defendants' motion". *Shaner et al. v. American Bar Association et al.,* C.A. 75–239, filed in the Northern District of Ohio. Dismissed on March 29, 1975, as being specious and disruptive of the orderly administration of the Courts.

On May 6, 1975, this Court held a consolidated hearing in the cases of *Turner and Daly v. American Bar Association et al., supra,* and *Turner v. Hunt et al., supra* and *United States v. Turner, supra,* in Lubbock, Texas. Represented at that hearing were the Plaintiffs Turner and Daly appearing *pro se,* and the Defendant Federal Judges, Federal Prosecutors and their agents, the State Bar of Texas and the American Bar Association, all of whom were represented by counsel. The Court listened to all that both sides had to say for several hours and every party was provided an opportunity to fully explain his views.

■ While this Court can understand from a professional point of view the judiciary's impatience with these rambling and inartfully drawn complaints which seek billions of dollars in damages from the entire judiciary,[10] this Court must respectfully disagree with those other Courts which believe that these suits are nothing more than a character assassination of the judiciary. This is so for several reasons. First, with regard to the longwinded, inconcise, and, at times, incoherent allegations of the complaint, this Court is under a duty to liberally construe pleadings filed by *pro se* litigants. *Kelly v. Butler County Board of Commissioners et al.,* 399 F.2d 132 (C.A.3, 1968); *Weaver v. Pate,* 390 F.2d 145 (C.A.7, 1968); *Eaton v. Bibb,* 217 F.2d 446 (C.A.7, 1953), cert. den., 350 U.S. 915, 76 S.Ct. 199, 100 L.Ed. 802 (1955). Second, by virtue of the Lubbock hearing, this Court is of the opinion that the Plaintiffs are sincere in their beliefs and in the questions that they are trying to raise. Third, with regard to the merits of the claims presented, this Court notes that the Plaintiffs have tangentially asserted at least two points of law which the Supreme Court has since recognized: that mandatory minimum fee schedules are violative of the Sherman Antitrust Act, *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), and that a State cannot force counsel on an unwilling criminal defendant, *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

This Court has read and re-read the complaints in these cases many times, as well as the Plaintiffs' Briefs which have been filed in two of these cases.[11] In the fabric of this nationwide litigation, there is but one thread that is woven and rewoven into the whole with sufficient clarity to delineate a claim: the denial by State and Federal Courts of the plaintiffs' alleged right, springing from the First, Sixth and Fourteenth Amendments, to have spokesmen of their own choice represent them in criminal and civil proceedings in Court.

This Court will consider the Plaintiffs' claim under the Sixth Amendment first. The Sixth Amendment states:

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."

Through its 185-year life, the Sixth Amendment has been interpreted and applied in tens of thousands of criminal prosecutions in State and Federal Courts. Curiously enough, very few of the Appellate decisions have dealt directly with the central question in this litigation.[12] The surprising absence of con-

---

10. In a case assigned to another Court, *Adams et al. v. American Bar Association et al., supra,* Footnote No. 9, many of the Defendant Federal Judges' wives were also sued.

11. *Turner and Daly v. American Bar Association et al.* and *Stockheimer, Daly et al. v. American Bar Association et al.*

12. This Court has found only two Circuit opinions that directly confront the issue at bar. In *United States v. Cooper,* 493 F.2d 473 (C.A.5,

1974), the Fifth Circuit held that there was no right to unlicensed lay counsel, especially where the Defendant had twice rejected competent Court-appointed counsel. The Fifth Circuit did not cite any authority in support of its holding. In *Guajardo v. Luna,* 432 F.2d 1324 (C.A.5, 1970), a prisoner sought to file a civil suit on behalf of his father, an illiterate who was not in prison. The State Court refused to accept the suit on the ground that only licensed attorneys were allowed to file suit.

trolling precedent in this area is best emphasized by the fact that the Supreme Court has just recently recognized for the first time in the history of our country the constitutional right of a defendant to defend himself without counsel in a State criminal prosecution. See *Faretta v. California, supra.* Nor has this Court been aided to any great degree by briefs of the various Defendant State Bar Associations who are vitally affected by the central issue in this case.

In order to understand the concept of "counsel" as it is used in the Sixth Amendment, it is necessary to start with an understanding of the common law system as it existed in England.

The English today and for centuries past have had a bifurcated system of practice where work was divided between barristers and solicitors. The barrister enjoys the monopoly of the right of advocacy in the superior English Courts. A barrister became such by being called to the Bar by one of the Inns of Court. He was later promoted by the Inn to Reader and then to Bencher and was thereafter "selected and tacitly allowed by the Judges to practice in the Courts." [13]

The work of the solicitor most nearly corresponds to the practice of law in the United States today. The solicitor enjoys the right of advocacy in the county and Magistrates' courts, although he may not practice in the superior courts, which are the sole domain of the barrister. As between solicitor and barrister, only the solicitor may have direct contact with the client, and it is the solicitor who instructs the barrister as to the client's wishes.[14] Like the barrister, the solicitor was admitted to practice by way of invitation.

As early as the year 1285, attorneys were allowed to appear for a party as a matter of course,[15] and by 1402, the admission to practice, as to both solicitor and barrister, was governed by statute:

"For sundry Damages and Mischiefs that have ensued before this time to divers persons of the Realm by a great number of attornies, ignorant and not learned in the Law, as they were wont to be before this time; (2) it is ordained and stablished, that all attornies shall be examined by the Justices, and by their Discretions their Names put in the Roll and that they be good and vertuous, and of good Fame, shall be received and sworn well and truly to serve in their Offices, especially that they make no Suit in a foreign Country;" 1 Alexander, British Statutes 279 (Coe's Edition 1912)

The above cited statute demonstrates the three-sided relationship between the lawyer, the crown and the public that was the cornerstone of the practice of law in England. The practice was generally controlled by the crown for the public good. The Courts were given the particular responsibility of qualifying lawyers who practice before them on the basis of training and character. Additionally, it should be noted, as is explained in *Brooks v. Laws,* 92 U.S.App. D.C. 367, 208 F.2d 18 (1953), that the whole English process of selecting and qualifying those to practice before the Bar was in the nature of a call, and the judgments rendered thereunder were evaluations as to fitness, and not judicial decisions from which an appeal would lie. Or, stated another way, there was no unqualified right to practice law.

Most of the above characteristics of the legal profession were transplanted to

---

The prisoner then sought a declaratory judgment from Federal District Court that the Constitution guaranteed him the right to file suit on behalf of his father. The District Court denied relief. On appeal, the Fifth Circuit held that there was no Constitutional guarantee that a non-attorney may represent other people in litigation. As in *United States v. Cooper,* no authority was cited.

13. 2 Holsworth, *History of English Law* 496 (1936).

14. Thurman et al., *The Legal Profession,* pp. 196–199 (1970).

15. *Brasier v. Jeary,* 256 F.2d 474 at 476 (C.A.8, 1958), cert. denied 358 U.S. 867, 79 S.Ct. 97, 3 L.Ed.2d 99 (1958).

colonial America and existed, in varying degrees, both prior to and during the critical years when the Constitution and Bill of Rights were written and passed.[16] In Massachusetts, admission to the Bar was controlled by each County Court; in Delaware, Rhode Island and Connecticut, the local Courts controlled the admissions of lawyers, and admission by a local Court gave the attorneys in these States the right to practice in all of the State Courts; and in South Carolina, the highest State Appellate Court controlled the admissions of attorneys. Following the revolution, New York and all Federal Courts followed the Massachusetts system of admission, wherein an attorney had to be admitted separately by each Court wherein he wished to practice. Later, however, some States switched to the "Delaware" method, whereby admission to one State Court gave a right to practice in all State Courts.

All States required that applicants to the Bar must meet some minimal standards, although the standards were not at all uniform. Some States had stringent standards of admission, whereas other States eventually eliminated all requirements for admission to the Bar, except good moral character. Notwithstanding the apparent ease with which one could enter the practice of law in some States, one did not do so except by permission of some governing body, and laymen did not practice law. See, generally, Friedman, *A History of American Law* (1973), pp. 276–277.

■ The foregoing discussion of the roots of the American lawyer is critical to the understanding of the word "counsel" as used by the framers in the Sixth Amendment. For centuries prior to the enactment of the Sixth Amendment, the English forerunner of the American lawyer was called or invited to practice for a Court only after the Court had satisfied itself that a person was fit to practice by virtue of his character and/or training. On the American side of the ocean, this practice continued throughout the colonial, revolutionary and post-revolutionary era of our history. Although standards for admission were not all uniform and were not always very stringent, the tradition of admission upon qualification continued to exist from even the earliest times of the American legal experience. This Court cannot find even a suggestion in the history of the Common Law after its primeval inception or in the history of the American lawyer that the word "counsel", as used in the Sixth Amendment, was meant to include a layman off the street without qualification as to either training or character.[17]

■ This Court's interpretation of the word "counsel" enjoys ample and consistent support of case law. *McKinzie v. Ellis*, 287 F.2d 549 (C.A.5, 1961); *Harrison v. United States*, 128 U.S.App.D.C. 245, 387 F.2d 203 (1967); *Guajardo v. Luna, supra; United States v. Cooper, supra*, and *United States v. Stockheimer*, 385 F.Supp. 979 (W.D.Wis., 1974). It is recognized that "the practice of law is

16. The graded division between Barristers and Solicitors did not long survive in the colonies. Friedman, *A History of American Law* (1973), p. 276. Additionally, it should be noted that American Courts recognized that a Court's decision as to fitness and qualifications to practice was in the nature of a judicial decision from which an appeal would lie. *Baird v. Arizona State Bar Association*, 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639 (1970); *Ex parte Garland*, 71 U.S. (4 Wall.) 333, 18 L.Ed. 366 (1866).

17. In *Faretta v. California, supra*, the Supreme Court at Footnote 16, therein, points out that the very first lawyers were indeed laymen:

"The first lawyers were personal friends of the litigant, brought into court by him so that he might 'take [counsel] with them' before pleading. 1 Pollock & Maitland, *History of English Law* 211 (1909). Similarly, the first 'attorneys' were personal agents, often lacking any professional training, who were appointed by those litigants who had secured royal permission to carry on their affairs through a representative, rather than personally. Id., at 212–213."

Note, however, that permission of the Crown was still needed. As is apparent from the aforecited English statutes, the requirement of qualification soon became the order of the day.

affected with a public interest and an attorney at law, as distinguished from a layman, has both public and private obligations, being sworn to act with all good fidelity toward both his client and the court." *United States v. Onan*, 190 F.2d 1 (C.A.8, 1951).[18] Although the Supreme Court has refused to pass on the question of whether the practice of law is a right versus a privilege, *Schware v. Board of Examiners*, 353 U.S. 232 at 239, note 5, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), it has consistently held that the public interest is of sufficient magnitude in this area to allow the legislative arm of the State to prescribe reasonable qualifications for entry into the profession.[19] *Ex parte Garland, supra; Schware v. Board of Examiners, supra; Konigsberg v. State Bar*, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810 (1956); *Baird v. State Bar of Arizona, supra.* There has been sharp conflict as to the limits of reasonable qualifications, *Baird v. State Bar of Arizona, supra*, at 2, but this Court has not found any case which has called into the question the Centuries-old power of the State in the first instance to set minimum standards for entry into the profession. Indeed, the most recent pronouncement from the Supreme Court solidly reaffirmed the compelling interests that States have in the regulation of the practice of professions within their boundaries. *Goldfarb v. Virginia State Bar, supra.*

Since the beginnings of our nation there has been statutory authority to enforce the rights recognized in the Sixth Amendment. 28 U.S.C.A. § 1654, formerly codified as § 35 of the Judiciary Act of 1789, 1 Stat. 73, 92, and later as 28 U.S.C.A. § 394, provides that:

> "In all of the Courts of the United States, the parties may plead and manage their own causes personally or by the assistance of such counsel or attorneys at law . . . ."

This Court has found no case which has interpreted this statute so as to allow an unlicensed layman to represent a party other than himself in a civil or criminal proceeding. Indeed, in a variety of different applications of this statute, the Courts have consistently held that unlicensed individuals may not represent other parties in Federal Court under this Statute. In *In re Looney*, 262 F. 209 (W.D.Tex., 1920), the District Court, on reviewing the decision of a Referee in Bankruptcy to not allow an attorney-in-fact to examine the bankrupt at the first meeting of the creditors, held that the clear implication of the statute excluded from the Court all other agents, attorneys-in-fact and proxies other than attorneys and counselors at law, and that it was a universal practice to exclude such non-licensed people from practicing in court. In *Heiskel v. Mozie*, 65 App. D.C. 255, 82 F.2d 861 (1936), a realty dealer acting as the owner's rental agent

---

**18.** Cert. denied 342 U.S. 869, 72 S.Ct. 112, 96 L.Ed. 654 (1951).

**19.** Because they represent distinct jurisdictions, the State and Federal Courts may have different requirements for admission to the practice of law before them. Generally, however, the Federal Court adopts or defers to the admission requirements of the State in which the Federal Court is located. The following Rule 1 B of The Local Rules for the United States District Court for the Southern District of Texas is typical:

> "B. *Eligibility; Application.* Any member in good standing of the State Bar of Texas who is a resident of or maintains his office in the State of Texas, and, if not residing within this District, is a member in good standing of the Bar of the United States Dis-

trict Court for the District of his residence or in which he maintains his office, may be admitted to the Bar of this Court if he is of good personal and professional character and is competent to practice in this Court."

Rule 1(b) of the Rules of the United States District Court for the Northern District of Indiana is as follows:

> "Any attorney admitted to practice by the Supreme Court of the United States or the highest court of any state may become a member of the bar of this court upon oral motion by a member of the bar of this court if the Court is satisfied that the applicant's private and professional character is good from the assurance of the movant or upon report of a committee appointed by the Court."

for a percentage-of-rent collected filed a *pro se* suit in Municipal Court in Washington, D. C., claiming that the tenant had defaulted and seeking recovery of the premises. The suit was opposed by a "friend of the Court" who moved the complaint be dismissed and that the *pro se* Plaintiff be held in contempt of Court for violation of Local Rule 22 requiring that only members of the Bar of the Supreme Court of the District of Columbia shall be allowed to represent parties in Court. The *pro se* petitioner was held in contempt and appealed. On appeal, the District of Columbia Circuit held that the petitioner was not, by virtue of his job as a rental agent, a party at interest. Hence, he could not file a *pro se* suit. Additionally, the Court noted that the *pro se* petitioner was not an attorney at law and emphasized that neither his ability nor his character had been examined. The Appellate Court held that he was properly held in contempt, as 28 U.S.C.A. § 1654 allowed only parties at interest or attorneys to litigate in the Federal Courts.

█ Corporations and partnerships, both of which are fictional legal persons, obviously cannot appear for themselves personally. With regard to these two types of business associations, the long standing and consistent court interpretation of § 1654 is that they must be represented by licensed counsel. In *S. Stern & Company v. United States*, 331 F.2d 310, 51 C.C.P.A. 15 (1963),[20] the Court of Customs and Patent Appeals held that 28 U.S.C.A. § 1654 would not allow a lay partner in a partnership to represent the partnership in a judicial proceeding. Likewise, there is a long line of cases starting with *Osborn v. Bank of United States*, 9 Wheat. (22 U.S. 738), 6 L.Ed. 204, and continuing through *Commercial & Railroad Bank of Vicksburg v. Slocomb*, 14 Pet. (39 U.S. 60), 10 L.Ed. 354 (1840); *Nightingale v. Oregon Central Railway Company*, 18 Fed.Cas. No. 10,264, p. 239; *Brandstein*

*v. White Lamps*, 20 F.Supp. 369 (S.D. N.Y., 1937); *MacNeil v. Hearst Corp.*, 160 F.Supp. 157 (Del., 1958); and *Flora Construction Company v. Fireman's Fund Insurance Company*, 307 F.2d 413 (C.A.10, 1962), which have held that under 28 U.S.C.A. § 1654 and its predecessor statutes a corporation may only be represented by licensed counsel. Several of these cases, particularly *Nightingale, Hearst* and *White Lamps*, have emphasized the importance of the Centuries-old concept of a Court having a lawyer before it who has been qualified to practice, and who is subject to the Court's control. The long-standing interpretation of § 1654, as applied to partnerships and corporations, is particularly relevant to one of the Plaintiffs' claims which is that some of them have speech impediments and are unable to represent themselves. (Transcript of aforementioned Lubbock hearing, p. 52.) Corporations and partnerships, by their very nature, are unable to represent themselves and the consistent interpretation of § 1654 is that the only proper representative of a corporation or a partnership is a licensed attorney, not an unlicensed layman regardless of how close his association with the partnership or corporation.

The same statute has been given a similar interpretation with regard to *pro se* litigants attempting to represent other litigants. In *McShane v. United States*, 366 F.2d 286 (C.A.9, 1966), a *pro se* petitioner filed what he designated as a Class Action, in which he was appearing for himself and was purporting to act on behalf of all other members of the class. The Ninth Circuit held that while he could act on his own behalf, since he was not an attorney he could not represent anyone else, as the privileges granted to him under § 1654 were personal to him.

█ From the foregoing analysis of the history of the practice of law, both in England and in the United States, this Court concludes that there is insub-

---

**20.** Cert. denied 377 U.S. 909, 84 S.Ct. 1169, 12 L.Ed.2d 179 (1964).

stantial historical support for the Plaintiffs' contention that they have a right to have an unlicensed layman assist them under the guise of the Sixth Amendment. This Court further concludes that 28 U.S.C.A. § 1654, which was enacted to enforce the Sixth Amendment's guarantees to right to counsel, only allows for two types of representation: that by an attorney admitted to the practice of law by a governmental regulatory body and that by a person representing himself. The statute does not allow for unlicensed laymen to represent anyone else other than themselves.

The Court wishes to note that the Plaintiffs have themselves wholly failed to provide this Court with any convincing authority, aside from the sincerity of their own beliefs, that the word "counsel", as used in the Sixth Amendment, includes unlicensed laymen within its ambit. The Plaintiffs have by brief (*Turner and Daly v. American Bar Association et al., supra,* and *Stockheimer and Daly et al. v. American Bar Association et al., supra*) argued that what they are seeking is an "assistant" to speak for them in various legal proceedings in Court. As defined in their brief, "assistant" is a person "who assists or serves in a subordinate position as a helper, a person who aids". Brief, p. 30. They argue that a right to have an assistant is also concomitant with the rights to peacefully assemble and to petition the government for redress of grievances as guaranteed by the First Amendment. They have additionally argued that their right has already been recognized by virtue of the ruling of United States District Judge James Doyle in *United States v. Stockheimer,* 385 F.Supp. 979 (W.D. Wisc., 1974). There Stockheimer, a Defendant in a criminal proceeding and a Plaintiff in one of the cases pending before this Court, filed a Motion to have Jerome Daly and Gordon Peterson, two disbarred Minnesota attorneys, assist him in his defense. In a very clearly written opinion, Judge Doyle held that in the absence of any constitutional or federal statutory provision compelling him to either forbid or not to forbid the Defendant such assistance, he would exercise his discretion in the matter and allow Stockheimer the assistance of Gordon Peterson in his criminal trial. Judge Doyle was careful to note that he was not recognizing a right of the Defendant Stockheimer, but was merely, within his discretion, granting the Defendant Stockheimer a request which Judge Doyle did not find was forbidden or prohibited by the Constitution or by Federal statutes.

In the cases at bar, the Plaintiffs, of course, are seeking much more than a discretionary grant of their request; they are seeking to have this Court elevate to the status of a constitutional right their desire to have an unlicensed layman assist them and perform functions in Court ordinarily performed by licensed attorneys.

Furthermore, this Court cannot accept the contention that even if the word "counsel", as used in the Sixth Amendment, does not include unlicensed laymen, a Defendant would still have the right to have an unlicensed lay assistant as an attorney under the banner of conducting one's own defense. Arguably, there is dicta in higher Court opinions, such as the following language from *Adams v. United States ex rel. McCann,* 317 U.S. 269 at 275, 63 S.Ct. 236 at 240, 87 L.Ed. 268 (1942), which plausibly supports Plaintiffs' contentions that a litigant may have an unlicensed assistant in the conduct of his own defense: "The short of the matter is that an accused, in the exercise of a free and intelligent choice, . . . may competently and intelligently waive his Constitutional right to assistance of counsel. There is nothing in the Constitution to prevent an accused from [following] the guidance of his own wisdom and not that of a lawyer." Arguably, a knowing and intelligent defendant might think that the best way for him to "manage his own defense" would be to have an unlicensed layman represent him in Court. Such a choice becomes even more attractive if

the defendant believes that the members of the Bar are in a conspiracy against him to deprive him of his rights, as well as line their own pockets with their monopolistic profits, as is alleged in the cases at bar. Plaintiffs' contention is minimally supported by language in *Faretta, supra,* where the Supreme Court, for the first time, formally recognized that the Sixth Amendment inherently allows the Defendant to manage his own defense: "Although he may conduct his own defense, ultimately to his own detriment, his choice must be honored out of 'the respect for the individual which is the lifeblood of the law.' " 422 U.S. at 834, 95 S.Ct. at 2541.

The problem with this contention is obvious and becomes most apparent when carried to its logical conclusion. Allowing a defendant to have his own unlicensed counsel represent him out of respect for his right to manage his own defense under the Sixth Amendment would amount to a wholesale authorization of the lay practice of law. For the Court to recognize the right of a defendant to defend himself in his own person is one thing. It is quite another thing to allow him to bring unqualified and untrained people off the street to conduct his defense.

█ In appropriate circumstances, a Federal Judge may, of course, allow a defendant to proceed with a lay assistant or to orally assist his licensed counsel in the presentation of his case, as was done by the undersigned in *United States v. Gaar.* See p. 457 of this Memorandum and Order. This is so because of the inherent power lodged in a Federal Judge to govern and control the conduct of the trial before him. *Herron v. Southern Pacific Company,* 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857 (1931); *Lefton v. City of Hattiesburg,* 333 F.2d 280 (C.A.5, 1964).

█ The Plaintiffs have also attempted to couch their right to have unlicensed laymen represent them in Court in terms of the First Amendment. Their argument is that the First Amendment guarantees the freedom of association and right to petition their government for redress of grievances. An alliance between a defendant, or plaintiff for that matter, and an unlicensed layman for the purpose of litigation in Court is an association which has as its end the redress of grievances. Hence, the argument goes, the First Amendment guarantees the right of the Plaintiffs to have unlicensed attorneys in Court. In support of their position, they have cited to this Court *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *Brotherhood of Railway Trainmen v. Virginia State Bar Association,* 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964); *United Mine Workers v. Illinois State Bar Association,* 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967); and *United Transportation Union v. State Bar of Michigan,* 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971). These cases did not involve the question of securing redress of grievances in Court by unlicensed counsel. Rather, they held that collective activity undertaken to obtain meaningful access to the Courts is a fundamental right within the protection of the first Amendment, and that a State cannot, under its unauthorized practice of law statutes or solicitation of legal business statutes, prohibit such activity. This Court is not today holding that the Plaintiffs must disband their organization or cease to espouse their cause in the Appellate Courts. Nor is this Court holding that these Plaintiffs may not represent themselves individually in Court. What this Court is holding is that the Constitution of the United States, in particular the First and Sixth Amendments, does not grant to the Plaintiffs the right to have an unlicensed layman represent them in Court proceedings. The corollary of this holding is that unlicensed laymen cannot under the Constitution demand the right to represent other litigants.

The Plaintiffs have cited the case of *Thomas v. Collins,* 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1944), in support of their proposition that the State cannot

"license speech". In *Thomas v. Collins*, Thomas, a vice-president of the CIO, was visiting Texas to deliver a speech to the employees of the Humble Oil and Refining Company's plant near Baytown, Texas. One of the purposes of the meeting was to encourage the non-union members to join a local union which had already organized some employees at the Baytown plant. The Texas Legislature had just passed a law requiring all labor organizers to register with the Secretary of State and obtain an organizer's card prior to conducting any membership activities in the State. The District Court of Travis County issued a Temporary Restraining Order prior to Thomas' speech prohibiting him from giving his speech until he obtained an organizing card. After the Order was served, Thomas addressed a meeting of workers, and at the end of the speech asked persons present to join the union. He was later arrested, held in contempt, fined and sentenced to a short term of imprisonment. The Supreme Court, in striking down Thomas' contempt conviction, held that the State regulation of labor unions, which is a legitimate State interest, in this particular instance partially infringed upon Thomas' First Amendment rights of free speech and free assembly. The facts alone in this case distinguish it from the cases at bar. This case did not involve the right to representation by an unlicensed lay attorney in Court under the guise of free speech or free assembly. In fact, the proposition for which the Plaintiffs are trying to cite this case—the right to conduct the business of unlicensed representation of litigants in Court—is directly rebutted by the concurring opinion of Mr. Justice Jackson, wherein he states: "A State may forbid one without a license to practice law as a vocation, but I think it could not stop an unlicensed person from making a speech about the rights of man or the rights of labor, or any other kind of

right, including recommending that his hearers organize to support his views. Likewise, the state may prohibit the pursuit of medicine as an occupation without its license, but I do not think it could make it a crime publicly or privately to speak urging persons to follow or reject any school of medical thought." *Thomas v. Collins, supra,* at 544, 65 S.Ct. at 329.

Having found that there is no constitutional right to unlicensed counsel, this Court now turns its attention to the various causes of action stated by the Plaintiffs.

In *Perma Life Mufflers v. Intn'l Parts Corp.,* 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968), the Supreme Court pointed out that the purposes of the antitrust laws are best served by the ever-present threat of private actions. This does not mean, however, that every private citizen may act as a sentinel to the public good by asserting general violations. *SCM Corp. v. RCA,* 407 F.2d 166 (C.A.2, 1969), cert. den. 395 U.S. 943, 89 S.Ct. 2014, 23 L.Ed.2d 461; *Rea v. Ford Motor Co.,* 497 F.2d 577 (C.A.3, 1974).[21] To have standing to sue the Plaintiff must sufficiently allege and demonstrate that his *legally cognizable business or property* has been injured as a proximate result of the alleged violation of the antitrust laws. *Winckler & Smith Citrus Products v. Sunkist Growers, Inc.,* 346 F.2d 1012 (C.A.9, 1965), cert. den., 382 U.S. 958, 86 S.Ct. 433, 15 L.Ed.2d 362; *Martin v. Phillips Petroleum Co.,* 365 F.2d 629 (C.A.5, 1966), cert. den. 385 U.S. 991, 87 S.Ct. 600, 17 L.Ed.2d 451; *Waldron v. British Petroleum Co.,* 231 F.Supp. 72 (S.D.N.Y., 1964).[22] This Court is convinced that the Plaintiffs wholly lack standing to bring this private antitrust suit for the reason that the Plaintiffs have failed to demonstrate that there is in fact any property or business, present or future, that is deserving of legal protection. The Plain-

---

21. Cert. denied 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 106 (1974).

22. See also *Jeffrey v. Southwestern Bell,* 518 F.2d 1129 (C.A.5, 1975) and *M. C. Manufacturing Company v. Texas Foundries, Inc.,* 517 F.2d 1059 (C.A.5, 1975).

tiffs state that the nature of their business is traveling in interstate commerce to represent each other before agencies of the federal government, and in particular the courts of the United States, as "attorneys" "licensed" only by the people that they will be representing.

As there exists no right or privilege under the First or Sixth Amendments to have an unlicensed layman represent a party in litigation, this Court must conclude that the corresponding "business" of laymen representing litigants in court does not exist or at least is not deserving of the legal protection of the antitrust laws. Consequently, the Plaintiffs lack standing to bring this antitrust action against any of the named Defendants. All of the Defendants' Motions to Dismiss for failure to state a claim upon which relief can be granted, with respect to the antitrust claims, are hereby granted.

The Court here wishes to specially note that it is aware of both the numerous allegations concerning fixed legal fees and the recent Supreme Court case of *Goldfarb v. Virginia State Bar, supra.* In *Goldfarb,* the Supreme Court found that mandatory minimum fee schedules for title searches were within the ambit of the antitrust laws and that State regulation of the integrated Virginia State Bar which encouraged the minimum fee system did not in and of itself qualify the Virginia State Bar for the *Parker v. Brown* exemption.[23] Except for *Taylor v. Montgomery et al.,* none of the cases at bar involve any plaintiffs who have alleged sufficiently delineated claims of purchases of legal services at a fixed rate. If anything, the thrust of these complaints is to the con-

trary: Plaintiffs want to utilize lay counsel who do not operate within the structure of a bar organization. It is elementary that a plaintiff who does not purchase or wish to purchase the goods or services which he claims are being marketed in violation of the antitrust laws lacks standing to assert the alleged violations. *SCM Corp. v. RCA, supra; Rea v. Ford Motor Co., supra.* All of the Plaintiffs, with the exception of Loran Taylor, in the cases at bar are without standing to assert any violations of the antitrust laws flowing from the existence of alleged fixed legal fees.

In *Taylor v. Montgomery,* the Plaintiff Taylor has sufficiently set forth facts which may entitle him to relief under the *Goldfarb* decision. Plaintiff Taylor states that he was forced to purchase legal services from a licensed attorney at an unreasonably high and fixed price. However, in this particular suit the Plaintiff has not sued anyone from which he could obtain relief. In particular he has not sued the lawyer that he hired at the fixed fee nor has he sued any bar association. Consequently, his cause of action based on price fixing must be dismissed for failure to state a claim upon which relief can be granted.[24]

As there exists no right or privilege to have unlicensed counsel represent the Plaintiffs at trial, the Plaintiffs' attempt to state causes of action under 42 U.S.C.A. §§ 1981–1986 for deprivation of the alleged right must necessarily fail and all Defendants' Motions to Dismiss all civil rights claims for failure to state a claim upon which relief can be granted are hereby granted.

The same fate also befalls the Plaintiffs' causes of action based on the

---

**23.** Prior to the Supreme Court's decision in *Goldfarb,* the three integrated Defendant State Bar Associations in these cases, the State Bar of Texas, the Alabama State Bar and the Wisconsin State Bar, could have claimed the *Parker v. Brown* exemption. In light of this Court's resolution of the substantive issues in these cases, it is unnecessary for the Court to determine the present status of the *Parker v. Brown* exemption.

**24.** In the other two suits at bar in which Loran Taylor is a Plaintiff, *Taylor and Daly v. American Bar Association et al.* and *Pendell, Pendell and Taylor v. American Bar Association et al.,* the Plaintiff Taylor does not allege that he was forced to purchase legal services at an unreasonably high fixed fee.

right of freedom of religion. Today's holdings that there is no right or privilege for a layman to practice law or to have unlicensed representation by a layman have as their corollary the recognition of a compelling state interest in the practice of law of sufficient magnitude to allow the State to circumscribe activity in the area. The Plaintiffs' causes of action based on the freedom of religion clause of the First Amendment must be dismissed as to all Defendants for failure to state a claim upon which relief can be granted. *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Biklen v. Board of Education,* 333 F.Supp. 902 (N.D.New York), affd., 406 U.S. 951, 92 S.Ct. 2060, 32 L.Ed.2d 340 (1972).

The Plaintiff Jerome Daly has individually asserted a cause of action wherein he claims that he has been prevented from establishing both his Life Science Church and law schools in the various States by the operation of the monopoly of the Defendants and seeks to recoup the revenues that he has lost thereby, $1,000,000,000. This cause of action is at best fanciful and this Court's holding that the regulation of the practice of law by the Legislative and Judicial Branches is constitutionally acceptable precludes any further discussion. This cause of action is to be dismissed for failure to state a claim upon which relief can be granted as to all Defendants.

In one of the cases at bar, *Taylor v. Montgomery et al.,* the Plaintiff Loran Taylor has attempted to state an additional cause of action based on 42 U.S.C.A. § 1983 arising out of his imprisonment for contempt of Court by the Defendant State Judge John Montgomery. The facts that the Plaintiff has alleged clearly show that the Defendant Judge Montgomery and the Defendant Sheriff Dean Bolerjack are entitled to judicial immunity and quasi-judicial immunity, respectively, as will be discussed more fully below. With regards to the two remaining Defendants against whom this cause of action is alleged, the De-

fendant National Bank and Trust Company and its Defendant Attorney, James Nafe, the cause of action must be dismissed for failure to state a claim upon which relief can be granted for the reason that the requisite state action is missing where private persons are said to have conspired with public officials entitled to judicial or quasi-judicial immunity. *Guedry v. Ford,* 431 F.2d 660 (C.A.5, 1970); *Luker v. Nelson,* 341 F.Supp. 111 (N.D.Ill., 1972); *Hansen v. Ahlgrimm,* 356 F.Supp. 1089 (E.D.Wisc., 1973).

There exists separate and apart from the above holdings several other reasons why these suits cannot succeed as against various groups of Defendants. The first is that of judicial immunity.

Few concepts are more deeply established in our common law than the immunity of judges from liability for acts committed within their judicial jurisdiction. *Bradley v. Fisher,* 13 Wall. 335, 20 L.Ed. 646 (1872). The rationale of this immunity is that a judge, in deciding cases that are before him, must be free from the fear that unsatisfied litigants, as in the cases at bar, will hound and harass him because of his rulings. If a judge is in error, the litigants' remedy is through appeal where his errors can be corrected; but he should not be dragged into court himself to answer charges against him which have their roots in his prior judicial decisions. This immunity applies even when a judge is accused of malice and corruption in his judicial functions. The benefactor of this broad protection is not the judge but the public whose interest it is that judges should be able to carry out their functions free from intimidation. *Scott v. Stansfield,* L.R. 3 Ex. 220 (1868).

With the exception of certain complaint paragraphs dealing with the "private overt act" of attending bar meetings, these Complaints are directed to the acts of the Defendant Judges in their judicial capacity. All of the named Defendant Judges are immune from suit under the Doctrine of Judicial Immunity and their Motions to Dismiss for failure

482

to state a claim upon which relief can be granted are hereby granted. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

From the Doctrine of Judicial Immunity has come the Doctrine of Quasi-Judicial Immunity. *Alzua v. Johnson*, 231 U.S. 106, 34 S.Ct. 27, 58 L.Ed. 142 (1913); *Bauers v. Heisel*, 361 F.2d 581 (C.A.3, 1966)[25] and cases cited therein at footnote 7. Quasi-Judicial Immunity is more limited than the immunity afforded Judges and extends only to those acts committed within the scope of the actor's jurisdiction and with the authorization of law. *Lewis v. Brautigam*, 227 F.2d 124 (C.A.5, 1955). The Doctrine is not for the benefit of a defendant-actor but rather for the benefit of the public whose interest it is that quasi-judicial officers should be at liberty to exercise their functions unfettered by fear of legal consequences. *Madison v. Gerstein*, 440 F.2d 338 (C.A.5, 1971).

In the cases at bar the Plaintiffs have named as Defendants the Attorney General of the United States and his Assistants, various United States Attorneys and their Assistants, State Attorneys General and their Assistants, State District Attorneys, and their Assistants, supporting court personnel such as clerks of the court and probation officers, and law enforcement officials. The Complaints fail to demonstrate that any of these Defendants acted beyond their jurisdiction or without the authorization of law. All causes of action against these Defendants are to be dismissed for failure to state a claim upon which relief can be granted by reason of the Doctrine of Quasi-Judicial Immunity.

The Plaintiffs have also attempted to name some of the quasi-judi-cial Defendants in their capacity as private individuals. Other than the broad and conclusory allegations such as that the Defendant prosecutors are members of the American Bar Association and/or State Bar Associations and attend their meetings, the Complaint fails to state any acts committed by the quasi-judicial Defendants in their capacity as private individuals. Therefore, all claims against the quasi-judicial Defendants to the extent that said claims are against them in their private capacities are to be dismissed for failure to state a claim upon which relief can be granted.

In two of the cases at bar the Defendants have moved this Court to enjoin future litigation of similar suits.[26] In cases assigned to other judges two such injunctions have already been issued. This Court cannot see how yet another injunction would serve any useful purpose. In addition to having at best only a cumulative effect an injunction in any or all of the civil cases at bar would require this Court to monitor for an indefinite period to come all future legal proceedings involving these litigation-minded Plaintiffs. For these reasons the Defendants' Motions for Injunctions are denied.[27]

However, this Court cannot overlook the handcuffing of the judiciary by the use of the tool of civil suits in conjunction with the rule of disqualification to forestall criminal proceedings against some of the Plaintiffs at bar. In late 1974 Congress amended the Federal Judicial Disqualification Statute, 28 U.S. C.A. § 455. The amended version is absent of any requirement that a judge in a criminal proceeding disqualify himself because of a contemporaneous civil proceeding instituted against the judge by

---

**25.** Cert. denied 385 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457 (1967).

**26.** *Turner and Daly v. American Bar Association et al.* and *Pendell, Pendell and Taylor v. American Bar Association et al.*

**27.** Many other defensive grounds have been raised by the Defendants which may be valid and form a complete defense to some of the Defendants. Included in these defenses are: improper venue, improper out of State service, *res judicata*, collateral estoppel and failure to comply with Rules 8(a) and (e) and 11, Fed.R. Civ.P. In light of today's exhaustive treatment of the substantive issues involved, this Court finds it unnecessary to comment on these defenses.

the defendant in the criminal case. Arguably under subsection "a" of the Statute it could be said that a judge could be so prejudiced because of the civil action that he could not fairly conduct the criminal trial. The answer to this lies in the wording of subsection "a". A judge is required to disqualify himself only where his impartiality "might reasonably be questioned." It will be up to other judges to decide at the time the issue arises whether or not their impartiality might reasonably be questioned. Certainly the resolution of the issues at bar in favor of the Defendants and the absolute immunity of judges acting in their official capacity should be taken into account by a judge in determining if the pendency of a civil action similar to the cases at bar might cause one to reasonably question his impartiality in a criminal case wherein the civil plaintiff is also a criminal defendant before him.

▌Nothing said in this Memorandum opinion touches on the disqualification of a Judge under Title 28, Section 144, United States Code, where an affidavit of bias or prejudice is filed. In that situation, a Judge must not proceed any further. This section has its built-in restriction because it limits the filing of such an affidavit by a party in any case to one affidavit of bias.

▌With respect to disqualification in civil actions where the trial judge to which the case happens to be assigned is also a defendant in the same action, 28 U.S.C.A. § 455 would require that the judge disqualify himself. This Court notes, however, that there is a maxim of law to the effect that where all are disqualified, none are disqualified. *Evans v. Gore,* 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887 (1920). The theory supporting this maxim is that if disqualification operates so as to bar justice to the parties and no other tribunal is available, the disqualified judge or judges may by necessity proceed to judgment. 48 C.J.S. Judges § 74. Although this maxim would allow the Supreme Court to proceed where all or a quorum of the Justices have been sued, it would seemingly not allow a District Court Judge to proceed if other judges are available by substitution. *Brinkley v. Hassig,* 83 F.2d 351 (C.A.10, 1936).

▌It is possible that lawsuits similar to the above will continue to be filed. In any case where the central theme of the complaint is the assertion of the right to have unlicensed lay counsel to represent a party, the Judge on whose docket the case falls should be free to dismiss the same *sua sponte,* even though he is a named party. A claim of the right to unlicensed counsel has been foreclosed by this opinion. If this opinion is ultimately affirmed on appeal, the making of such claim in the future would be specious and a Judge, even if a party-defendant, should not disqualify himself. *Ely Valley Mines, Inc., et al. v. Lee,* 385 F.2d 188 (C.A.9, 1967). This will prevent useless and time consuming reassignment of a case in this situation.

All requested relief not specifically granted or denied herein is hereby denied.

A judgment is this day being entered dismissing all of the above entitled and numbered lawsuits and dropping them from the docket of the respective Courts.